Eastern District of Kentucky
**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

NOV 0 8 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-132-KSF

DORIS ADKINS                                                          PLAINTIFF

V.

LIFE INSURANCE COMPANY OF                                   DEFENDANTS
NORTH AMERICA and CIGNA LIFE
INSURANCE COMPANY OF NEW YORK

## OPINION & ORDER

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on defendants' motion for partial summary judgment [DE #6] and plaintiff's motion to remand [DE #9].  Having been fully briefed, these matters are ripe for review.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Doris Adkins ("Adkins") originally filed her complaint in Madison Circuit Court.  On April 4, 2005, Defendants, Life Insurance Company of North America and CIGNA Life Insurance Company of New York ("CIGNA"), removed Adkins's cause of action to this Court based on federal question jurisdiction.  Defendants argue that this action is founded on a claim or right arising under the laws of the United States, specifically under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

Plaintiff contends that Defendants' group policy number NYK 20001 is not a plan covered

by the provisions of ERISA. Therefore, Plaintiff claims that Defendants' removal of this action was improper and the case should be remanded to Madison Circuit Court.

Plaintiff worked as a machine operator for L-3 Communications Integrated Systems ("L-3"). L-3 offered to Adkins, and its other employees, long-term disability (LTD) benefits via a group insurance policy. Adkins elected to receive LTD coverage under L-3's benefits coverage. On October 26, 2003, Adkins was approved to receive LTD benefits. On December 18, 2003, CIGNA notified that it was terminating Adkins's LTD benefits, effective January 20, 2004. On March 14, 2005, Adkins filed her complaint in Madison Circuit Court alleging that the termination of her LTD benefits was wrongful. She also asserts claims for bad faith and a violation of Kentucky's Unfair Settlement Practices Act.

The parties dispute L-3's level of involvement with Adkins's LTD plan. The parties agree that L-3 made no contribution to Adkins's LTD plan. Adkins paid the premium in full and her election of LTD benefits was completely voluntary. The benefits plan provided to Adkins, and other L-3 employees, is designated as the "L-3 Communications Health & Welfare Plan" (the "Plan"). L-3 associates its own company logo with the Plan. L-3 drafted the Benefits Brochure provided to employees which describes the terms of the disability insurance and includes a summary of all employee benefits offered.

The Group Policy issued to Adkins does not mention ERISA governing the policy, but instead states that New York state law applies. Additionally, the Benefits Brochure does not state that the Plan is governed by ERISA. Defendants assert that L-3 filed FORM 5500 with the IRS, indicating that this was an ERISA covered plan.

Plaintiff states that L-3 was not involved in the interpretation of policy language,

2

determining eligibility of coverage or investigating the claim, other than receiving correspondence whether the claim was denied or approved and providing basic information to CIGNA regarding Plaintiff's rate of pay, last day of work, job description, job title, and whether she was a salaried or hourly worker. All decisions regarding claims for LTD benefits were made solely by CIGNA. Adkins claims that she dealt directly with CIGNA personnel regarding her LTD claim. Correspondence directed to Adkins regarding her LTD claim were sent to her with the CIGNA logo atop of the correspondence.

Plaintiff also notes that Group Policy indicates that no change in the Policy will be valid until approved by an executive officer of CIGNA. The Group Policy directs that notices of claims and proof of claims must be delivered directly to CIGNA.

## II.    ANALYSIS

In their motion for partial summary judgment, Defendants assert that Plaintiff's claims for bad faith and a statutory violation of Kentucky's Unfair Claims Settlement Practices Act are pre-empted by ERISA. Defendants contend that if ERISA governs the Plan, summary judgment must be entered for Defendants on these state law claims. Plaintiff does not contest that if ERISA governs the Plan, summary judgment should be entered for Defendants on Plaintiff's state law claims. Instead, Plaintiff's sole argument is that ERISA does not govern the Plan, thus, Plaintiff filed a motion to remand in addition to her response to Defendants' motion for partial summary judgment.

Adkins argues that this case should be remanded because the provisions of ERISA are not applicable to the Plan. Defendants, as the removing parties, bear the burden of proving the existence of federal jurisdiction. *Long v. Bando Mfg. of Am., Inc.*, 201 F3d 754, 757 (6th Cir.

3

2000).

In determining whether a plan is an ERISA plan, a district court must undertake a three-step factual inquiry. *Ackerman v. Fortis Benefits Ins. Co.,* 254 F.Supp.2d 792, 804 (S.D. Ohio 2003). First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. *Fugarino v. Hartford Life and Accident Ins. Co.,* 969 F.2d 178, 183 (6th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *International Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 297 (6th Cir.1991)[citation omitted]. Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees. *See McDonald v. Provident Indem. Life Ins. Co.,* 60 F.3d 234, 236 (5th Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991). *Thompson v. American Home Assurance Co.,* 95 F.3d 429, 434-35 (6th Cir. 1996).

In the instant case, Adkins does not dispute that the second and third factors have been satisfied by Defendants, but instead disputes the first factor. Plaintiff believes that whether the Plan is exempt by virtue of coming within a safe harbor provision promulgated by the Department of Labor ("DOL"). Those provisions provide:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an

4

insurer to employees or members of an employee organization, under which
(1) No contributions are made by an employer or employee organization;
(2) Participation [in] the program is completely voluntary for employees or members;
(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). The only one of these provisions at issue in the instant case is the third provision, that of endorsement or involvement.

The seminal case discussing endorsement in the Sixth Circuit is *Thompson v. American Home Assurance Co., supra.* In *Thompson*, the Sixth Circuit adopted the analysis used by the First Circuit in *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir. 1995). *Thompson* noted, "[t]he crucial task before the court ... is to determine the set of circumstances in which employer neutrality is compromised to such an extent that ERISA should provide the governing framework" and noted that "a finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Nicholas v. Standard Ins. Co.*, 48 Fed.Appx. 557 (6th Cir. 2002) (citing *Thompson*, 95 F.3d at 436).

*Thompson* listed several factors for courts to consider in determining whether an employer endorsed a plan: "[W]here the employer plays an active role in either determining which

5

employees will be eligible for coverage or in negotiating the terms of the policy or benefits provided thereunder, the extent of employer involvement is inconsistent with 'employer neutrality' and a finding of endorsement may be appropriate." *Thompson*, 95 F.3d at 436. *Thompson* also noted: "[w]here the employer is named as the plan administrator, a finding of endorsement may be appropriate." *Ibid.* Finally: "[W]here the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Id.* at 437; *Nicholas*, 48 Fed.Appx. at 562.

In the instant case, the Benefits Brochure does not specifically refer to ERISA or that the plan is governed by ERISA. However, Defendants claim that L-3 was significantly involved in the creation and maintenance of the Plan. As evidence of L-3's involvement, Defendants point to the Benefits Brochure which indicates that L-3 "reserves the right to change, terminate, suspend, withdraw, reduce, amend or modify the Plans at any time." Furthermore, Defendants state that L-3 was named as the plan administrator. Defendants assert that endorsement is indicated by the use of L-3's name in the title of the plan, which is entitled the "L-3 Communications Health & Welfare Plan". *See Ackerman*, 254 F.Supp.2d at 808 (finding that one factor in determining that the safe harbor provision was inapplicable was that the plan was named the "US Air Long Term Disability Plan"). Defendants also note that L-3 believes that the Plan is covered by ERISA, which is indicated by the company filing Form 5500 with the IRS.

Plaintiff argues that L-3 being named as the plan administrator is not determinative of endorsement. *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir. 2000)

6

(citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir. 1998). Likewise, Plaintiff contends that L-3 filing Form 5500 is not determinative of endorsement in the absence of any evidence that the employees knew of this filing. *Johnson*, 63 F.3d at 1137, n.5. Plaintiff further claims that L-3 was not significantly involved with the maintenance of the Plan because all of her dealings with the LTD claim were directly with CIGNA. CIGNA, not L-3, decided whether or not to pay LTD benefits.

Since the Plan is designated the"L-3 Communications Health & Welfare Plan", L-3 was designated the plan administrator and the Benefits Brochure states that L-3 reserves the right to change, terminate, suspend, withdraw, reduce, amend or modify the Plans at any time, there is some factual showing of substantial involvement by L-3 in the creation and administration of the Plant. The Court finds that L-3 has endorsed the Plan; therefore, the safe harbor provision is not applicable. Accordingly, the Court will deny Plaintiff's motion to remand.

Since the Court has found that ERISA governs the Plan, Plaintiff's state law claims will be pre-empted. The Court will, thus, grant Defendants' motion for partial summary judgment and dismiss Plaintiff's state law claims.

## V. CONCLUSION

For the foregoing reasons, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that:

      [1]    plaintiff's motion to remand [DE #9] is DENIED;

      [2]    defendants' motion for partial summary judgment is GRANTED;

      [3]    plaintiff's claims for bad faith are DISMISSED WITH PREJUDICE;

      [4]    plaintiff's claims for a statutory violation of Kentucky's Unfair Claims

7

Settlement Practices Act are DISMISSED WITH PREJUDICE;

[5]     plaintiff's remaining claims shall proceed; and

[6]     this Opinion and Order is interlocutory in all respects.

This _____ day of November, 2005.

_____

KARL S. FORESTER, SENIOR JUDGE

8